UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MARTINEZ, | Case No.: 12cv1298-GPC (MDD) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL** |
| v. | |
| R. MADDEN, et al., | **[ECF No. 33]** |
| Defendants. | |

## I.   Procedural History

On May 29, 2012, Plaintiff Ronald Martinez, a state prisoner proceeding pro se and in forma pauperis, filed a civil rights lawsuit under 42 U.S.C. § 1983.  (ECF No. 1).  Plaintiff's operative First Amended Complaint alleges that his First Amendment rights were violated by Defendants when they allegedly retaliated against him for filing inmate grievances.  (ECF No. 5).  The First Amended Complaint alleges Defendants sought to chill his speech by fabricating a piece of evidence (a "kite" – a note passed by inmates) that falsely accused him

1

1   of conspiring to assault a peace officer, which resulted in him being

2   housed in the Administrative Segregation Unit during the

3   investigation, and by unduly prolonging the investigation to extend his

4   stay in the Administrative Segregation Unit. (*Id*. at 2). On September

5   5, 2014, Plaintiff filed a motion to compel discovery responses from

6   Defendants Gervin and Madden. (ECF No. 33). Specifically, Plaintiff

7   seeks responses to requests 1-3, 5-9, and 17 in his Requests for

8   Production of Documents (Set 1), requests 5 and 6 in his Requests for

9   Production of Documents (Set 2), interrogatories 3, 4, and 8 served on

10  Defendant Madden, and interrogatories 2, 3, 5-7, 11 served on

11  Defendant Gervin. (*Id*.). On September 26, 2014, Defendants filed an

12  opposition. (ECF No. 37). Plaintiff filed his reply on October 16, 2014.

13  (ECF No. 45). After careful consideration of all of the papers filed in

14  support of and in opposition to this motion, and the authorities cited

15  therein, Plaintiff's motion to compel is hereby **GRANTED** in part and

16  **DENIED** in part for the reasons set forth below.

17  **II.   Standard**

18      Rules 26 through 37 "have been interpreted liberally to allow

19  maximum discovery." *Spell v. McDaniel*, 591 F. Supp. 1090, 1114 (E.D.

1  N.C. 1984) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)).

2  Accordingly, the burden of resisting discovery is on the party opposing

3  discovery.  *Miller v. Pancucci*, 141 F.R.D. 292, 299 (C.D. Cal. 1992)

4  (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

5        Rule 26(b)(1) allows discovery regarding any matter that is (1)

6  nonprivileged, and (2) relevant to any party's claim or defense.

7  Relevant information for discovery purposes includes any information

8  "reasonably calculated to lead to the discovery of admissible evidence."

9  Fed. R. Civ. P. 26(b)(1).  District courts have broad discretion to

10  determine relevancy for discovery purposes.  *Hallett v. Morgan*, 296

11  F.3d 732, 751 (9th Cir. 2002).  If relevancy is not apparent from the face

12  of a request, the propounding party has the burden to show relevance.

13  *Floyd v. Grannis*, Case No. S-08-cv-2346-WBS-JKM-P, 2010 WL

14  2850835 at *1 (E.D. Cal. July 19, 2010) (quoting *Cardenas v. Dorel*

15  *Juvenile Group, Inc.*, 232 F.R.D. 377, 382-383 (D. Kan. 2005)).

16  Similarly, district courts have broad discretion to limit discovery where

17  the discovery sought is "unreasonably cumulative or duplicative, or can

18  be obtained from some other source that is more convenient, less

19  burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(c).

12cv1298-GPC (MDD)

### III. __Analysis__

A. <u>Requests relating to kite evidence</u>
Request for Production of Documents (Set 1) no. 1; Interrogatory to Defendant Madden no. 3; Interrogatory to Defendant Gervin no. 11

Document request no. 1 demands "[t]he 'kite' evidence utilized to implicate Plaintiff in a conspiracy" to assault prison staff. (ECF No. 33 at 9). The interrogatories ask each Defendant to state verbatim the text of the kite. (*Id*. at 37, 47). Plaintiff states he is seeking the kite evidence so that he can prove that it was fabricated as he alleges in his operative complaint. One of Plaintiff's theories is that Defendant Gervin wrote the kite and pretended it came from a confidential informant, and thus Plaintiff is seeking a copy of the actual kite so that he can compare the kite handwriting to Defendant Gervin's handwriting. (ECF No. 33 at 32). Defendants object that the "[o]fficial information privilege" excuses them from providing the kite evidence, because disclosure would violate privacy, and endanger the safety and security of the "institution and staff." (*Id*. at 50-55 (Defendants' privilege log and declaration of Rebeca Larios in support thereof); ECF No. 37 at 3).

12cv1298-GPC (MDD)

1    Federal common law recognizes a qualified privilege for official

2    information. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th

3    Cir. 1990).  The official information privilege protects information

4    collected by law enforcement agencies. *See Kelly v. City of San Jose*,

5    114 F.R.D. 653, 660 (N.D. Cal. 1987).  In determining when a document

6    or information falls within the official information privilege, the Ninth

7    Circuit has adopted a balancing test. *Sanchez*, 936 F.2d at 1033-34.

8    "[C]ourts must weigh the potential benefits of disclosure against the

9    potential disadvantages.  If the latter is greater, the privilege bars

10   discovery." *Id*.  Some sister courts have stated that the proper

11   operation of the balancing test requires a "balancing approach that is

12   moderately pre-weighted in favor of disclosure." *See Kelly,* 114 F.R.D.

13   at 661 (citations omitted).

14       In order to trigger the Court's balancing of interests, the party

15   opposing disclosure must make a substantial threshold showing. *Soto*

16   *v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995).  The party

17   opposing disclosure "must submit a declaration or affidavit from a

18   responsible official with personal knowledge of the matters to be

19   attested to in the affidavit." *Id*.  The declaration "must include: (1) an

5

affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality… (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made." *Kelly*, 114 F.R.D. at 670.

Once the party asserting the privilege meets the threshold burden, the court will review the documents in light of the balancing test articulated in *Kelly*, which includes, but is not limited to: (1) the extent to which disclosure will thwart the governmental process by discouraging citizens from giving the government information; (2) the impact of having their identities disclosed upon persons who have given information; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary;

12cv1298-GPC (MDD)

1    (5) whether the party seeking discovery is an actual or potential

2    defendant in any criminal proceeding either pending or reasonably

3    likely to follow from the incident in question; (6) whether the

4    investigation has been completed; (7) whether any interdepartmental

5    disciplinary proceedings have arisen or may arise from the

6    investigation; (8) whether the plaintiff's suit is not frivolous and

7    brought in good faith; (9) whether the information sought is available

8    from discovery or through other sources; and, (10) the importance of the

9    information sought to the plaintiff's case. *See Kelly*, 114 F.R.D. at 663

10   (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973.))

11       Plaintiff asserts that the declaration Defendants provided is

12   inadequate under *Kelly*. (ECF No. 33 at 11-14). Defendants provided a

13   declaration explaining that providing the kite would endanger the

14   safety of staff and other inmates and hinder future investigations.

15   (ECF No. 33 at 50-53). But the declaration is lacking in several

16   respects. First, the declarant does not declare that she actually

17   reviewed the kite; she merely declares that she is authorized to view

18   "prison and CDCR records at Centinela Prison." (ECF No. 33 at 50-53).

19   Second, the declarant attests that disclosing "these documents" "would

12cv1298-GPC (MDD)

1   directly threaten the safety of inmates and staff, by revealing the

2   identity and nature of confidential sources inside the prison." (*Id.* at

3   51:17-19).  Ms. Larios, however, does not declare that the kite was

4   signed by the confidential informant or otherwise explain how

5   disclosing the kite evidence would reveal the identity and nature of

6   confidential sources.  (*Id.*).  The declarant also does not specifically

7   address the effect of a protective order.  (*Id.*).

8       In their brief, Defendants contend Plaintiff will be able to discern

9   the identity of the confidential informant from the handwriting, but do

10  not offer an explanation as to how Plaintiff could discern the

11  informant's identity if the text of the kite is simply transcribed for him.

12  Defendants' concern that Plaintiff's true purpose in seeking this

13  evidence is to root out "snitches" raises the reasonable and substantial

14  concern that if Plaintiff is permitted to keep a copy of the kite, he will

15  be able to compare it to the handwriting of other inmates he obtains in

16  unrelated contexts in the future, thus endangering the informant and

17  chilling disclosures by inmate informants.  As a result of such chilling,

18  other inmates and staff will be at greater risk, because informants will

19  not come forward to prevent imminent safety and security threats.  But

1 Defendants do not explain why those harms cannot be avoided by
2 redacting the identifying portions of the kite from a verbatim
3 transcription, or by permitting Plaintiff to view a redacted version of
4 the kite for a limited period of time.

5      Even though the declaration filed by Defendants does not meet all
6 of the requirements in *Kelly*, Defendants' brief supplements the
7 declaration with an explanation of the contents of the kite and the
8 potential for harm.  Considering these together, the Court finds
9 Defendants have made a "substantial threshold showing," thus
10 triggering the balancing test articulated in *Kelly*.

11      The Court has considered the *Kelly* factors,[1] and finds that limited
12 disclosure of the kite to Plaintiff is appropriate.  There is a substantial
13 risk that producing photocopies of the kite to Plaintiff will thwart
14 important governmental processes by discouraging inmates from giving
15 the prison staff information about threats to safety.  Likewise,
16 disclosure of personally identifiable information about the confidential
17 informant would increase risk of harm to the informant personally.

18 _____

19 [1] Although the Court considered all of the *Kelly* factors, only the most
pertinent are discussed herein.

9

There is no pending or proposed investigation, which weighs in favor of disclosure.  Also supporting disclosure, in this instance the underlying investigation has been completed in Plaintiff's favor.  The ninth factor also weighs in favor of disclosure, in that the kite is not available from any other source, although the use of discovery-limiting tools, such as redaction, a protective order, or a limited inspection, support a finding of limited disclosure rather than outright production of the kite.  Finally, the kite evidence is important to the Plaintiff's complaint, the thrust of which is that Defendants fabricated the kite evidence.  Accordingly, the Court finds that limited disclosure of the kite evidence, tailored to avoid the substantial risk of harm identified by Defendants, is appropriate in this instance.  The Court hereby **ORDERS** as follows:

1. Defendants are hereby **ORDERED** to make the necessary arrangements with Plaintiff and the Litigation Coordinator at the facility in which Plaintiff is incarcerated for Plaintiff to inspect—but not copy—a true and correct photocopy of the redacted kite.  Defendants are **ORDERED** to make true and correct photocopy of the kite, but may redact the names of inmates and cell numbers and any other personally-identifiable

10

information (except for Plaintiff's), which they shall then provide

to the appropriate prison official or staff member in advance of

the inspection.

2. The inspection of the kite **SHALL** occur after Defendants have

provided Plaintiff with the exemplar of Defendant Gervin's

handwriting that this Court orders them to produce elsewhere in

this order.  Plaintiff may bring the exemplar of Defendant

Gervin's handwriting with him to the inspection.

3. Plaintiff **SHALL** be permitted **<u>a half hour time period</u>** to

review the kite.

4. Plaintiff **IS ORDERED** not to take the kite with him and not to

make any sort of permanent copy (including photocopy or hand-

tracing).

5. Plaintiff may take notes on his own paper (not on the kite),

which he may retain.

6. Defendants are **ORDERED** to arrange for an appropriate

member of the prison staff or a prison official to be in the room

during the inspection, and to obtain a declaration signed under

penalty of perjury from the staff or official attesting that

11

1   Plaintiff was given the kite to review, that the inspection period

2   lasted a half hour, that paper and a writing utensil were

3   available to Plaintiff to take notes, that Plaintiff was permitted

4   to bring the exemplar of Defendant Gervin's handwriting, that

5   Plaintiff did not make a photocopy or trace the kite, and that

6   Plaintiff did not retain the kite provided for the inspection.

7   B. Requests relating to Lino and his cellmate
    Requests for Production of Documents (Set 1) nos. 2-8;
8   Interrogatory to Defendant Madden no. 8

9   In these requests, Plaintiff seeks records relating to inmate Lino

10  and Lino's cellmate, both of whom, Plaintiff explains, were placed in the

11  Administrative Segregation Unit with him and were implicated in a

12  conspiracy to assault staff.  (ECF No. 33 at 20-30, 40-41).  Plaintiff is

13  seeking the evidence relied on by prison staff to implicate Lino and his

14  cellmate, as well as evidence showing Lino's housing transfers after the

15  alleged events occurred.  (*Id.*).  Plaintiff and Defendants disagree as to

16  whether Lino and his cellmate were implicated in the same conspiracy

17  with Plaintiff, or in a separate, unrelated conspiracy.  (*Id.*; ECF No. 37

18  at 3:26-28).  Defendants contend the evidence sought is not relevant to

19  Plaintiff's claims, and is protected by privacy doctrines.  Indeed,

12

1    Plaintiff has not met his burden to show the relevance of this evidence

2    to this action.  At issue here is whether Defendants fabricated evidence

3    against Plaintiff in a conspiracy to retaliate against him for filing

4    inmate grievances.  Plaintiff does not raise class allegations, or

5    allegations that prison staff have a policy or practice of fabricating

6    evidence to deter inmate grievances, or allege that Lino or his cellmate

7    were being retaliated against for filing grievances.  Even if the

8    information Plaintiff demands about Lino and his cellmate were of

9    liminal relevance, Plaintiff's and the public's interest in discovering all

10   evidence is outweighed in this instance by Lino's and his cellmate's

11   privacy rights.  For these reasons, Plaintiff's motion is **DENIED** as to

12   these requests.

13       C. Requests relating to modified programming
         Request for Production of Documents (Set 1) no. 17; Interrogatory
14       to Defendant Madden no. 4

15       Document request no. 17 seeks Program Status Reports at

16   Centinela State Prison from January 2006 through January 2011.

17   (ECF No. 33 at 33-36).  Defendants contend that this request is moot

18   because they have agreed to produce the Reports for a more limited

19   period, January 1, 2010 and December 31, 2011.  (ECF No. 37 at 5).  In

12cv1298-GPC (MDD)

1  his reply, Plaintiff acknowledges that the parties agreed to a limited

2  period, but contends that the period they agreed to was January 1, 2010

3  to December 31, 2012.  (ECF No. 45 at 10).  The Court finds that the

4  two year period running from January 1, 2010 to December 31, 2012 is

5  sufficiently tailored to avoid burden and expense to Defendants.

6  Consequently, the Court hereby **GRANTS** Plaintiff's motion as to

7  document request no. 17, and **ORDERS** Defendants to produce the

8  Program Status Reports at Centinela State Prison from January 1,

9  2010 to December 31, 2012.

10         Relatedly, interrogatory no. 4 to Defendant Madden seeks the

11  dates, facilities, and inmate race groups (e.g., Southern Hispanics,

12  Mexican Nationals, etc.) who have been placed on modified program

13  pending an investigation of a conspiracy to assault staff from November

14  2006 through November 2011.  (ECF No. 33 at 38-39).  Defendants

15  assert that the information is not reasonably calculated to lead to the

16  discovery of admissible evidence, and that they do not have this

17  information in their possession, custody, or control.  Defendants further

18  argue that their agreement to produce Program Status Reports

19  pursuant to document request no. 17 should suffice for this overlapping

12cv1298-GPC (MDD)

1    request.  The Court agrees with Defendants that the information

2    requested is not relevant to Plaintiff's claims of individualized

3    retaliation, because he is not advancing a claim that the prison's

4    procedures for dealing with conspiracies to assault staff are defective.

5    Moreover, the Court declines to order Defendants to produce documents

6    not within their possession, custody, or control.  Accordingly, the Court

7    **DENIES** Plaintiff's motion to compel further response to interrogatory

8    no. 4 to Defendant Madden.

9

10    D. Requests relating to policies for handling inmate conspiracies
       Requests for Production of Documents (Set 2) nos. 5, 6

11    Requests 5 and 6 seek CDCR and Centinela State Prison manuals,

12    policies, and procedures for handling inmate conspiracies to assault

13    staff or officers.  (ECF No. 33 at 36).  Defendants argue that the motion

14    is moot as to these requests, because they responded that a search for

15    responsive documents was being conducted, that they are in the process

16    of completing that search, and that they agree to provide an updated

17    response with any responsive documents within thirty days

18    (presumably of the date their opposition was filed on September 26,

19    2014).  (ECF No. 37 at 6:3-7).  Plaintiff replied that Defendants'

15

1   assurance they will produce documents is an empty promise, and notes

2   that 93 days (as of October 16, 2014) elapsed without any responsive

3   documents being produced.  The Court disagrees that the motion to

4   compel these requests is mooted by Plaintiff's mere agreement to

5   produce the documents.  Moreover, the 30 day period Defendants

6   permitted themselves expired on October 27, 2014.  If Defendants have

7   indeed produced the responsive documents, then the motion is mooted.

8   But there is no evidence that Defendants have produced the documents

9   in the record.  Accordingly, the Court **GRANTS** Plaintiff's motion to

10  compel responsive documents to requests 5 and 6, and **ORDERS**

11  Defendants to produce the documents within 10 days of entry of this

12  order, unless Defendants have already produced the documents.

13      E. Miscellaneous requests relating to Defendant Gervin
        Requests for Production of Documents (Set 1) no. 9; Interrogatories
14      to Defendant Gervin nos. 2, 3, 5-7

15      Document request no. 9 seeks an exemplar of Defendant Gervin's

16  handwriting.  (ECF No. 33 at 31-33).  Plaintiff explains that he is

17  seeking the exemplar in order to compare Defendant Gervin's

18  handwriting to the handwriting on the kite that implicated Plaintiff in

19  the conspiracy to assault staff.  (*Id*. at 32).  Defendants oppose on the

1   basis that they already provided an exemplar in the form of a chrono

2   with Defendant Gervin's handwriting and signature.  (ECF No. 37 at

3   4:24-27).  Plaintiff contends that the chrono only included a few letters

4   of handwriting in addition to the signature.  (ECF No. 45 at 9).  Neither

5   party attaches the chrono for the Court to evaluate its sufficiency.  The

6   Court finds that Plaintiff has shown the relevancy of his request for a

7   handwriting exemplar, that the chrono provided may be insufficient,

8   and that the burden to Defendants in producing a more lengthy

9   handwriting exemplar is minimal.  Consequently, the Court hereby

10  **GRANTS** Plaintiff's motion as to this request and **ORDERS** that

11  Defendant Gervin produce to Plaintiff a more lengthy handwriting

12  exemplar.

13      Interrogatory no. 2 to Defendant Gervin seeks disciplinary

14  information about any misconduct (including off-duty) by Gervin during

15  his career.  (ECF No. 33 at 41).  Defendants object that the demand is

16  overly broad, irrelevant, seeks inadmissible character evidence, and

17  that the information is private and confidential peace officer records.

18  (ECF No. 37 at 7).  Defendant's objections are well taken.  Plaintiff has

19  not carried his burden to show the relevancy of information about

17

1   Defendant Gervin's past, unrelated (and hypothetical) misconduct.

2   Even if he had, the request is overly broad, and Plaintiff has not shown

3   that his interest in obtaining the evidence outweighs Defendant

4   Gervin's privacy interests.  Consequently, the Court hereby **DENIES**

5   Plaintiff's motion as to interrogatory no. 2 to Defendant Gervin.

6        Interrogatory no. 3 to Defendant Gervin seeks a list of all lawsuits,

7   including case number, filed against Defendant Gervin at anytime.

8   (ECF No. 33 at 43).  Defendants objected that the interrogatory seeks

9   information that is equally available to Plaintiff, and that it seeks

10  irrelevant information.  (ECF No. 37 at 7-8).  Nevertheless, Defendants

11  confirm that they did provide Plaintiff with a list of two lawsuits filed

12  against Defendant Gervin, including party names, years, locations, and

13  the nature of the allegations.  (*Id.*).  Plaintiff is not satisfied, and

14  demands that Defendants produce the case numbers for the two

15  lawsuits.  The Court finds that the information sought is equally

16  available to Plaintiff, particularly now that Defendants have provided

17  the party names, years, and locations of the lawsuits.  Consequently,

18  Plaintiff's motion to compel further response to interrogatory no. 3 to

19  Defendant Gervin is **DENIED**.

12cv1298-GPC (MDD)

1    Plaintiff's interrogatories nos. 5-7 to Defendant Gervin are difficult

2  to understand.  For instance, interrogatory no. 5 asks "what work

3  assignments would you have assigned plaintiff to, that he would not

4  have liked (in order to be AIA assigned and receive weekend yards)."

5  (ECF No. 33 at 44).  The Court has attempted to discern the meaning of

6  each request, and it appears that the requests ask Defendant Gervin

7  what he would have done in hypothetical situations or how Defendant

8  Gervin knew things that Plaintiff alleges were not true.  (ECF No. 33 at

9  44-46).  The interrogatories are more akin to arguments relating to

10  alleged insults and threats, the content of which is tangential—at

11  best—to these proceedings.  The truth or falsity of the threats and

12  insults Plaintiff alleged Defendant Gervin made are not at issue; only

13  evidence as to whether Defendant Gervin made or did not make the

14  alleged statements is relevant here.  Defendant Gervin appropriately

15  objected to these requests as argumentative, vague and ambiguous, and

16  irrelevant.  Plaintiff's motion as to interrogatories nos. 5-7 to Defendant

17  Gervin is therefore **DENIED**.

18

19

12cv1298-GPC (MDD)

## IV.  Conclusion

In accordance with the foregoing analysis, Plaintiff's motion is

**GRANTED IN PART**, and Defendants are **ORDERED**:

1. To make the necessary arrangements for Plaintiff to inspect but
   not copy the redacted kite as outlined in more detail above;

2. To produce the Program Status Reports at Centinela State
   Prison from January 1, 2010 to December 31, 2012;

3. To produce the documents responsive to Request for Production
   of Documents (Set 1) Nos. 5 and 6 within 10 business days of
   entry of this order, unless Defendants have already produced the
   documents; and,

4. To produce a more lengthy handwriting exemplar from
   Defendant Gervin within 10 business days of entry of this order.

Plaintiff's motion is in all other respects **DENIED**.

**IT IS SO ORDERED.**

Dated:   November 13, 2014

Hon. Mitchell D. Dembin
United States Magistrate Judge

20

12cv1298-GPC (MDD)